| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7 | **BRODSKY SMITH**<br>Evan J. Smith, Esquire (SBN 242352)<br>esmith@brodskysmith.com<br>Ryan P. Cardona, Esquire (SBN 302113)<br>rcardona@brodskysmith.com<br>9595 Wilshire Boulevard, Suite 900<br>Beverly Hills, CA 90212<br>Phone: (877) 534-2590<br>Facsimile: (310) 247-0160<br><br>*Attorneys for Plaintiff* |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES JARDINE,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>AMBRX BIOPHARMA, INC., STEPHEN GLOVER, DANIEL O'CONNOR, KATE HERMANS, JANET LOESBERG, PAUL MAIER, and MARGARET R. DALESANDRO,<br><br>　　　　　　　Defendants. | Case No.: **'24CV0262 LL   SBC**<br><br>**Complaint For:**<br><br>(1) Violation of § 14(a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, James Jardine ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against Ambrx Biopharma, Inc. ("Ambrx" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of

- 1 -
COMPLAINT

1  Defendants' efforts to sell the Company to Johnson & Johnson ("Parent") through merger vehicle Charm Merger Sub, Inc. ("Merger Sub," and together with Parent, "Johnson & Johnson"), as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a January 8, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Parent will acquire each share of common stock, of the Company ("Company Common Stock") issued and outstanding immediately prior to the Effective Time (other than certain Company Shares to be canceled pursuant to the Merger Agreement and Company Shares with respect to which appraisal rights have been exercised) will automatically be converted into the right to receive cash in an amount equal to $28.00 per share. As a result, Ambrx will become a wholly owned subsidiary of Parent.

3. Thereafter, on January 19, 2024, the Company filed a Preliminary Proxy Statement on Form PREM14A with the SEC in support of the Proposed Transaction, followed by a Definitive Proxy Statement on January 29, 2024 (together, the "Proxy Statement").

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: (a) Company insiders own large illiquid blocks of Company stock which will be converted into merger consideration; (b) Company insiders own company options, restricted stock units, and other equity awards, all of which are subject to accelerated vesting and conversion into merger consideration; and (c) certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages.

5. The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed, and rational decision of whether to vote in favor of the Proposed Transaction and is thus in violation of the Exchange Act. As detailed below, the Proxy

Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Ambrx, provided by Ambrx management to the financial advisor Centerview Partners LP ("Centerview") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Centerview, if any, and provide to the Company.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.

## PARTIES

7. Plaintiff is a citizen of Alabama, and at all times relevant hereto, has been an Ambrx stockholder.

8. Defendant Ambrx, a clinical stage biopharmaceutical company, focuses on discovering and developing antibody drug conjugates (ADCs) and other engineered therapies to modulate the immune system. The Company is incorporated in Delaware and has its principal place of business at 10975 North Torrey Pines Road, La Jolla, CA 92037. Shares of Ambrx common stock are traded on the NASDAQ Stock Exchange ("NASDAQ") under the symbol "AMAM."

9. Defendant Stephen Glover ("Glover") has been Chairman of the Company Board at all relevant times.

10. Defendant Daniel O'Connor ("O'Connor") has been a director of the Company at all relevant times. Additionally, Defendant O'Connor serves as the Chief Executive Officer ("CEO") and President of the Company.

11. Defendant Kate Hermans ("Hermans") has been a director of the Company at all relevant times.

12. Defendant Janet Loesberg ("Loesberg") has been a director of the Company at all relevant times.

13. Defendant Paul Maier ("Maier") has been a director of the Company at all relevant times.

14. Defendant Margaret R. Dalesandro ("Dalesandro") has been a director of the Company at all relevant times.

15. Defendants identified in ¶¶ 9 - 14 are collectively referred to as the "Individual Defendants."

16. Non-Party Parent researches, develops, manufactures, and sells various products in the healthcare field worldwide.

17. Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

**JURISDICTION AND VENUE**

18. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

19. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company maintains its headquarters in this District.

**SUBSTANTIVE ALLEGATIONS**

*Company Background*

21. Ambrx, a clinical stage biopharmaceutical company, focuses on discovering and developing antibody drug conjugates (ADCs) and other engineered therapies to modulate the immune system.

*The Flawed Sales Process*

22. As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company.

23. The Proxy Statement fails to adequately disclose why the Company was willing to meet Johnson & Johnson's expedited timeline for entering into the Proposed Transaction rather than wait on an offer from Party A, or to at least insist on a "Go-Shop" provision in an attempt to garner a superior bid.

24. Moreover, the Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Johnson & Johnson, whether this agreement differed from any other agreement with potentially interested third parties not specifically mentioned by the Proxy Statement.

25. Further, the Proxy Statement fails to adequately disclose any and all of the communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

26. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

27. On January 8, 2024, Ambrx issued a press release announcing the Proposed Transaction. The press release stated, in relevant part:

> SAN DIEGO, January 8, 2024 -- Ambrx Biopharma, Inc., or Ambrx (NASDAQ: AMAM), today announced that it has entered into a definitive agreement pursuant to which Johnson & Johnson will acquire all of the outstanding

shares of Ambrx for $28.00 per share in cash, representing an approximately 105% premium to Ambrx's closing stock price on January 5, 2024, for a total equity value of approximately $2.0 billion.

"We are excited to reach this agreement with Johnson & Johnson for advancing scientific research to treat cancers with high unmet needs," said Daniel J. O'Connor, Chief Executive Officer of Ambrx. "With our deep and unique knowledge of precision engineering of protein therapeutics enabled by our proprietary technology incorporating synthetic amino acids in living cells, Ambrx has developed next-generation novel drug candidates such as site-specifically conjugated highly stable antibody drug conjugates. Through this transaction, we will continue to advance our leading prostate cancer candidate and Ambrx's promising pipeline, while delivering significant and certain cash value to our shareholders. This announcement is the culmination of two decades of scientific work, combined with the Ambrx team's talent, hard work and innovation. I look forward to what Ambrx will achieve as part of Johnson & Johnson."

Ambrx's proprietary Antibody Drug Conjugate (ADC) technology incorporates the advantages of highly specific targeting monoclonal antibodies securely linked to a potent chemotherapeutic payload to achieve targeted and efficient elimination of cancer cells without the prevalent side-effects typically associated with chemotherapy. Building on a legacy of innovation in oncology and in prostate cancer, Johnson & Johnson scientists intend to work with Ambrx researchers, accelerating the Phase 1/2 APEX-01 study (NCT04662580) of ARX517 in advanced prostate cancer, while progressing a pipeline of novel product candidates.

The transaction, which was unanimously approved by the Ambrx Board of Directors, is expected to close in the first half of 2024, subject to customary closing conditions, including approval by Ambrx shareholders and clearance under the Hart-Scott-Rodino Antitrust Improvements Act.

*Potential Conflicts of Interest*

28.     The breakdown of the benefits of the deal indicates that Ambrx insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Ambrx.

29.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company as

follows:

| Name | Shares Beneficially Owned (#) | Cash Consideration for Shares Beneficially Owned ($) |
|---|---|---|
| Daniel J. O'Connor | 48,202 | 1,349,656 |
| Sonja Nelson | 22,936 | 642,208 |
| Andrew Aromando | — | — |
| Margaret R. Dalesandro, Ph. D. | — | — |
| Stephen Glover | — | — |
| Kate Hermans | — | — |
| Paul V. Maier | — | — |
| Janet Loesberg, Pharm D. | — | — |
| Edward Hu | — | — |
| Katrin Rupalla | — | — |
| Xiaowei Chang | — | — |

30. In addition, Company insiders currently own company options, restricted stock units, and other equity awards, all of which will be subject to accelerated vesting upon the consummation of the Proposed Transaction, and converted into the Merger Consideration not shared with public Company stockholders such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Name | In the Money Options (vested) (#) | Cash Consideration for Vested In the Money Options ($) | In the Money Options (unvested) (#) | Cash Consideration for unvested In the Money Outstanding Options ($) |
|---|---|---|---|---|
| Daniel J. O'Connor | 254,386 | 6,435,039 | 692,256 | 16,472,379 |
| Sonja Nelson | 355,505 | 9,121,184 | 250,006 | 5,829,429 |
| Andrew Aromando | 9,263 | 105,042 | 417,735 | 7,337,111 |
| Margaret R. Dalesandro, Ph. D. | — | — | — | — |
| Stephen Glover | 8,333 | 118,412 | 29,881 | 425,009 |
| Kate Hermans | 60,000 | 1,562,400 | 15,000 | 390,600 |
| Paul V. Maier | 34,166 | 889,683 | 10,834 | 282,117 |
| Janet Loesberg, Pharm D. | 30,833 | 802,891 | 14,167 | 368,909 |
| Edward Hu | — | — | — | — |
| Katrin Rupalla | 14,285 | 371,981 | — | — |
| Xiaowei Chang | — | — | — | — |

| Name | Company RSU Awards (#) | Cash Consideration for Company RSU Awards ($) |
|---|---|---|
| Daniel J. O'Connor | 1,044,643 | 29,250,004 |
| Sonja Nelson | 157,143 | 4,400,004 |

| | | |
|---|---|---|
| Andrew Aromando | 100,000 | 2,800,000 |
| Margaret R. Dalesandro, Ph. D. | 27,976 | 783,328 |
| Stephen Glover | 12,142 | 339,976 |
| Kate Hermans | 12,142 | 339,976 |
| Paul V. Maier | 12,142 | 339,976 |
| Janet Loesberg, Pharm D. | 12,142 | 339,976 |
| Edward Hu | — | — |
| Katrin Rupalla | — | — |
| Xiaowei Chang | — | — |

31.     Moreover, certain employment agreements with certain Ambrx executives entitle such executives to severance packages, should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff.

32.     The Proxy Statement fails to adequately disclose communications regarding post-transaction employment. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

33.     Thus, while the Proposed Transaction is not in the best interests of Ambrx, Plaintiff, or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Proxy Statement*

34.     The Ambrx Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, fails to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

35. The Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Proxy Statement fails to disclose:

    a. Why the Company was willing to meet Johnson & Johnson's expedited timeline, but unwilling to await a proposal from Party A, or require a "Go-Shop" period to potentially find a superior bid adding more value for the Company's Public Stockholders;

    b. Whether the confidentiality agreements entered into by the Company with Johnson & Johnson differed from any other unnamed confidentiality agreement entered into between the Company and any interested third parties; and

    c. Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Ambrx Financial Projections*

36. The Proxy Statement fails to provide material information concerning financial projections for Ambrx provided by Ambrx management to Centerview and relied upon by Centerview in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

37. Notably, the Proxy Statement reveals that as part of its analyses, Centerview reviewed: "certain internal information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of Ambrx, including the Projections, prepared by management of Ambrx and furnished to Centerview by Ambrx for purposes of Centerview's analysis."

38. The Proxy Statement should have, but fails to provide, certain information in the projections that Ambrx management provided to Centerview. Courts have uniformly stated that

"projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

39. With regards to the *Certain Financial Projections (Risk Adjusted)* the Proxy Statement fails to disclose:

   a. Gross Profit and the inputs, metrics, and assumptions used to determine same, including specifically, cost of goods sold;

   b. EBIT and the inputs, metrics, and assumptions used to determine same, including specifically, earnings before interest and taxes, and total operating expenses.

40. The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

41. This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

42. Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Centerview's financial analyses, or make an informed decision whether to vote his shares in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Centerview*

43. In the Proxy Statement, Centerview describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying

assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

44. With respect to the *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose:

    a. The present value of the Company, as of December 31, 2023, utilized, and the inputs, metrics, and assumptions used to determine same;

    b. The implied terminal value of the Company, and the inputs, metrics, and assumptions used to determine same;

    c. The inputs, metrics, and assumptions used to determine the discount rates of 14.0% to 16.0%;

    d. The weighted average cost of capital for the Company utilized; and

    e. The inputs, metrics, and assumptions used to determine the perpetuity decline rate of 50% year-over-year.

45. With respect to the *Analyst Price Targets Analysis,* the Preliminary Proxy Statement fails to disclose:

    a. The specific price targets analyzed; and

    b. The specific Wall Street firms that generated the analyzed price targets.

46. With respect to *Precedent Premiums Paid Analysis,* the Preliminary Proxy Statement fails to disclose:

    a. The specific transactions analyzed;

    b. The per share acquisition price in each transaction analyzed;

    c. The closing price of the target company's common stock analyzed;

    d. The specific inputs, assumptions, and metrics used to determine the range of 65% to 110% applied to the Company's closing stock price on January 4, 2024; and

  e. The specific inputs, metrics, and assumptions used to determine the range of 70% to 135% applied to the Company's 30-day volume weighted average price ("VWAP") of the shares of Company Common Stock as of January 4, 2024.

47. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

48. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Ambrx stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

49. Plaintiff repeats all previous allegations as if set forth in full herein.

50. Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

51. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent

or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

52. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

53. The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

54. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

55. The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

56. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

57. Plaintiff repeats all previous allegations as if set forth in full herein.

58. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

59. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

60. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Ambrx's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading. As a result,

the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

61. The Individual Defendants acted as controlling persons of Ambrx within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Ambrx to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Ambrx and all of its employees. As alleged above, Ambrx is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

    A.    Enjoining the Proposed Transaction;

    B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

    C.    Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

    D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

    E.    Granting such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: February 9, 2024                    **BRODSKY SMITH**

By: *Evan J. Smith*
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*